UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATY PICKERING,

                            Plaintiff,

v.                                                                      8:17-CV-700
                                                                                 (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

SCHNEIDER & PALCSIK                      MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court St.
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.           JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

       This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 15.)  This case has proceeded in accordance with General Order 18.

       Currently before the Court, in this Social Security action filed by Katy Pickering ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part, to the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and denied in part, and Defendant's motion is granted in part and denied in part.

**I.      RELEVANT BACKGROUND**

    **A.      Factual Background**

Plaintiff was born in 1981.  (T. 163.)  She received her GED.  (T. 168.)  Generally, Plaintiff's alleged disability consists of cervical spine stenosis and post-traumatic stress disorder ("PTSD").  (T. 167.)  Her alleged disability onset date is January 19, 2014.  (T. 81.)  Her date last insured is December 31, 2018.  (*Id.*)[1]  She previously worked as a customer service representative and social service aid.  (T. 22, 168.)

    **B.      Procedural History**

On April 25, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 91.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On November 19, 2015, Plaintiff appeared before the ALJ, Dale Black-Pennington.  (T. 29-80.)  On March 3, 2016, ALJ Black-Pennington issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 7-28.)  On June 22, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

---

[1]      The ALJ ultimately determined Plaintiff's date last insured is December 31, 2019.  (T. 12.)  Neither party contests the ALJ's finding.

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-24.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2019 and Plaintiff had not engaged in substantial gainful activity since January 19, 2014. (T. 12.) Second, the ALJ found Plaintiff had the severe impairments of cervical spinal stenosis, PTSD, anxiety, and depression. (*Id.*) The ALJ determined Plaintiff's obesity, carpal tunnel syndrome ("CTS"), "ankle, heel, and foot pain," headaches, stomach problems, kidney problems, hirsutism, sleep apnea, and lack of menstruation were non-severe impairments. (T. 12-15.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15-16.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b)[2], except:

> [Plaintiff] requires the ability to move about and change positions for comfort. She must avoid rapid neck movements. She is able to follow and understand simple instructions and directions. She is able to perform simple rote task. She must avoid overhead reaching. She must avoid unprotected heights, vibrations, and heavy moving mechanical parts. She can occasionally stoop or crouch. She can perform occasional stair or ramp climbing.

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

3

(T. 17.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-24.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in weighing the medical opinion evidence in the record. (Dkt. No. 11 at 20-26 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred at step two by not finding Plaintiff's thoracic outlet syndrome a severe impairment. (*Id.* at 26-28.) Third, Plaintiff argues the ALJ erred in not crediting Plaintiff's testimony. (*Id.* at 28-35.) Fourth, Plaintiff argues she is disabled by the combination of her thoracic outlet syndrome, her obesity, her CTS and swelling in her hands, her tarsal tunnel syndrome, her cervical spinal stenosis, her kidney stone, her sleep disorder, the side effects of her medications, and her mental limitations. (*Id.* at 35-45.) Fifth, and lastly, Plaintiff argues the ALJ did not meet her burden at step five that Plaintiff could perform work in the national economy. (*Id.* at 45-47.)

### B. Defendant's Arguments

In response, Defendant makes arguments. First, Defendant argues substantial evidence supported the ALJ's assignment of weight to the medical assessments in the record. (Dkt. No. 12 at 8-14 [Def.'s Mem. of Law].) Second, Defendant argues substantial evidence supports the ALJ's finding that Plaintiff's thoracic outlet syndrome was not a severe impairment. (*Id.* at 14-15.) Third, Defendant argues substantial evidence supports the ALJ's finding that Plaintiff was not as impaired as she alleged.

4

(*Id*. at 15-17.)  Fourth, and lastly, Defendant argues substantial evidence supports the ALJ's finding that Plaintiff could perform a significant number of jobs.  (*Id*. at 17-19.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

6

For ease of analysis, Plaintiff's arguments will be addressed in a consolidated manner.

### A. The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c)[3]. The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

---

[3] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Plaintiff asserts the ALJ erred in her step two determination because the ALJ failed to find Plaintiff's thoracic outlet syndrome, obesity, CTS, and "double crush" severe impairments. (Dkt. No. 11 at 26-28, 39-41, 42-43 [Pl.'s Mem. of Law].) At step two, the ALJ thoroughly discussed Plaintiff's obesity and CTS. (T. 13.) The ALJ ultimately determined, based on the objective medical evidence in the record, Plaintiff's obesity and CTS did not cause more than minimal limitation in Plaintiff's ability to perform basic work activities. (*Id.*) However, the ALJ's otherwise thorough and well-reasoned step two analysis failed to provide any discussion of Plaintiff's thoracic outlet syndrome. (T. 12-14.) Although the ALJ found other severe impairments at step two and continued with the sequential process, the ALJ's failure to discuss Plaintiff's thoracic outlet syndrome at step two was not harmless error because the ALJ did not consider the effect of the impairment in the remainder of her analysis. *See Reices-*

*Colon,* 523 F. App'x at 798 (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps).

Remand is recommended because the ALJ failed to consider Plaintiff's thoracic outlet syndrome at step two. The ALJ's error cannot be deemed harmless because substantial evidence in the record contained evidence of work related functional limitations due to this impairment which the ALJ failed to consider in formulating Plaintiff's RFC.

### B. The ALJ's Weighing of the Evidence and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) . The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statements about what Plaintiff can still do, provided by any medical sources. *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. *Id.* § 404.1527(c)(1)-(6).

Plaintiff essentially argues the ALJ erred in formulating her physical RFC determination because she failed to properly weigh the medical opinion evidence in the record and substantial evidence did not support the conclusion Plaintiff was capable for light work. (Dkt. No. 11.) Plaintiff's record does not contain a medical source statement by an acceptable treating source; however, a consultative examiner examined Plaintiff and provided a medical source statement and RFC assessment.

9

On December 11, 2015, Nader Wassef, M.D. examined Plaintiff. (T. 942-946.) On examination Plaintiff had a normal gait, could walk on heels and toes without difficulty, could squat, used no assistive devices, needed no help changing or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 944.) Dr. Wassef observed on examination, Plaintiff had full range of motion in her cervical spine without pain or spasm and no trigger points. (*Id.*) Dr. Wassef observed Plaintiff had full range of motion, full strength, no sensory abnormality, and no muscle atrophy, in her upper extremities. (*Id.*) Dr. Wassef noted Plaintiff had full range of motion, no tenderness, no spasm, and no trigger points in her thoracic and lumbar spines. (T. 945.) He noted Plaintiff had negative straight leg raises. (*Id.*) Dr. Wassef observed Plaintiff had full range of motion, full strength (5/5), no muscle atrophy, no sensory abnormality, and no joint effusion, inflammation, or instability in her lower extremities. (*Id.*) In a medical source statement, Dr. Wassef opined:

> [b]ased on today's examination, this [Plaintiff] has moderate limitations with regard to standing, walking, climbing and descending stairs, bending, squatting, lifting, pushing, pulling, and handling, as well as operating foot controls. [Plaintiff] should not drive cars or trucks or operate heavy machines. She should not perform any type of high altitude activity and should not dive or swim.

(*Id.*)

In addition to his medical source statement, Dr. Wassef completed a RFC form. (T. 947-951.) Dr. Wassef indicated, due to neck pain and thoracic outlet syndrome, Plaintiff could lift and carry up to ten pounds occasionally, and never over 11 pounds. (T. 947.) He indicated Plaintiff could sit for six hours in an eight hour work day and stand/walk for two hours in an eight hour workday. (T. 948.) Dr. Wassef noted due to neck pain and thoracic outlet syndrome, Plaintiff could

occasionally: reach overhead; reach all other directions; handle; finger; feel; and push/pull. (T. 949.) Dr. Wassef opined that due to "body pain," Plaintiff could occasionally operate foot controls. (*Id.*) He indicated Plaintiff could occasionally: climbs stairs and ramps; climb ladders or scaffolds; and balance. (T. 950.) He opined Plaintiff could never: stoop; kneel; crouch; or crawl. (*Id.*) He opined Plaintiff could never tolerate: unprotected heights; moving mechanical parts; operating motor vehicles; or vibrations. (T. 951.) Dr. Wassef indicated Plaintiff could perform activities of daily living. (T. 952.)

The ALJ afforded Dr. Wassef's opinions "great weight." (T. 21.) The ALJ outlined Dr. Wassef's findings on examination and summarized Dr. Wassef's opined limitations as "some limitations such as in walking, standing, and lifting." (T. 21.) The ALJ noted Dr. Wassef's opinion Plaintiff should avoid unprotected heights and heavy machinery. (*Id.*) The ALJ stated Dr. Wassef was an acceptable medical source and his "objective findings and assessment opinions [were] supported by the record as whole." (*Id.*) The AL specifically noted the medical record showed "normal musculoskeletal and neurological function" and Plaintiff testified she could care for her children and attend "some of their school events." (*Id.*)

To be sure, Dr. Wassef's opinion supports portions of the RFC determination, such as the determination Plaintiff must avoid unprotected heights, vibrations, and heavy moving mechanical parts. However, the majority of Dr. Wassef's opinion does not support the RFC assessment. Dr. Wassef's RFC form essentially limited Plaintiff to sedentary work with addition limitations in her ability use her hands, use her feet, and

11

other postural limitations. (T. 948-949.) The ALJ failed to recognize the contradictions and failed to cite evidence in the record to support her determination that Plaintiff was capable of performing the exertional and non-exertional demands of light work. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) (remanding where ALJ afforded consultative examiner's opinion great weight but the opinion did not support the ALJ's RFC determination and the ALJ failed to recognize the contradiction and failed to note other evidence more credible than consultative examiner's opinion). Further, it is unclear from the ALJ's determination if she reviewed Dr. Wassef's RFC assessment form because her decision makes no mention of the specific work related limitations provided in the form nor does her decision cite to the form.

  Defendant asserts that although Dr. Wassef's assessments were inconsistent with some of the aspects of the RFC for light work, the doctor's "benign examination results" which the ALJ assigned "great weight" were consistent with the RFC for light work. (Dkt. No. 12 at 10 [Def.'s Mem. of Law].) However, it is not for this Court to re-weigh the evidence on the ALJ's behalf or create a post-hoc explanation for the fact that she gave great weight to an opinion that contradicted his RFC assessment.

  Further, as stated herein, the ALJ failed to address Plaintiff's thoracic outlet syndrome at step two. Dr. Wassef noted the limitations he imposed in his RFC determination were based, in part, on Plaintiff's thoracic outlet syndrome.

  In addition, the opinion evidence overall indicated Plaintiff's RFC was more restrictive than accounted for by the ALJ. Plaintiff's treating physician's assistant ("PA"), Erika Thompson, opined on July 15, 2014 Plaintiff could lift and carry up to ten pounds, but never over 11 pounds. (T. 766.) Such restriction is consistent with Dr. Wassef's

2015 opinion.  PA Thompson further opined Plaintiff could sit for a total of four hours in an eight hour workday, stand for three hours total, and walk for an hour total.  (T. 767.)  Both Dr. Wassef and PA Thompson provided greater limitations in Plaintiff's ability to stand/walk than provided for in the ALJ's RFC.

Further, PA Thompson and Dr. Wassef opined Plaintiff had non-exertional limitations.  PA Thompson and Dr. Wassef, provided limitations regarding Plaintiff's ability to use her upper extremities.  PA Thompson opined Plaintiff could never: reach overhead; reach in all other directions; or push/pull.  (T. 768.)  PA Thompson, like Dr. Wassef, opined Plaintiff could occasionally: handle; finger; and feel.  (T. 768, 950.)  PA Thompson and Dr. Wassef opined Plaintiff's limitations were due, in part, to her thoracic outlet syndrome.  (T. 768-771, 947-951.)  PA Thompson and Dr. Wassef, opined Plaintiff should never: climb ladders or scaffolds; stoop; crouch; or crawl.  (T. 769, 950.)  Unlike Dr. Wassef, PA Thomson opined Plaintiff could occasionally: climb stairs and ramps and knee.  (T. 769.)  Both sources opined Plaintiff could occasionally balance. (T. 769, 950.)

In a separate statement, dated April 4, 2015, PA Thompson opined Plaintiff was "moderately limited" in her ability to: walk, stand, lift, carry, use her hands, and climb stairs or other climbing.  (T. 828.)  PA Thompson further opined on April 4, 2015, Plaintiff had no evidence of limitations in her ability to: sit and see, hear, or speak.  (*Id.*)  PA Thompson indicated the restriction provided were expected to last one to three months.  (*Id.*)  Despite a notation the restrictions were not expected to last twelve months, the restrictions were consistent with those PA Thompson provided in July of

2014 and consistent with Dr. Wassef's restrictions in 2015, thus spanning a period of at least twelve months.

To be sure, physicians' assistants are not "acceptable medical sources" under the Regulation, but rather are "other sources." 20 C.F.R. § 404.1513(a), (d). While opinions from other sources are properly considered in assessing Plaintiff's overall RFC they need not be given the controlling weight accorded to opinions from treating medical sources. *See id.* § 404.1527(c)(2); *see Eusepi v. Colvin*, 595 F. App'x 7, 8-9 (2d Cir. 2014). However, here Dr. Wassef's opined limitations were consistent with the evidence in the record as a whole, including PA Thompson's opinion.

Plaintiff makes numerous other arguments in support of her contention that the ALJ failed to properly assess her RFC. (Dkt. No. 11 at 35-47 [Pl.'s Mem. of Law].) However, Plaintiff's underlying argument is the ALJ erred in her assessment of the opinion evidence in the record and therefore her RFC determination was not supported by substantial evidence.

Overall, the ALJ's step four analysis failed to explain why she implicitly rejected the majority of Dr. Wassef's opinion despite affording it great weight and despite the opinion's consistency with other opinion evidence in the record. Therefore, remand is recommended for a proper evaluation of the medical opinion evidence in the record and an RFC determination.

### C. Plaintiff's Remaining Arguments

#### i.) Mental RFC Determination

Plaintiff argues the ALJ erred in her mental RFC determination because the record contained evidence of limitations in social functioning, concentration, pace, and

persistence. (Dkt. No. 11 at 41 [Pl.'s Mem. of Law].) Plaintiff further argues the ALJ failed to consider her mental limitations in combination with her physical impairments. (*Id.*)

Here, the ALJ's mental RFC determination was supported by substantial evidence in the record. Although Plaintiff received mental health treatment, a treating provider did not provide a medical source statement. On December 11, 2015, consultative examiner Carly Mount, Psy.D., performed a psychiatric evaluation and provided a medical source statement. (T. 955-960.) Dr. Mount further completed a RFC assessment. (T. 961-963.)

Dr. Mount opined Plaintiff was able to follow and understand simple directions and instructions; able to perform simple tasks; and had mild to moderate limitations maintaining attention and concentration. (T. 958.) She opined Plaintiff had mild to moderate limitations maintaining a regular schedule and mild limitation learning new tasks. (*Id.*) Dr. Mount stated Plaintiff was able to make appropriate decisions, had mild to moderate limitation relating adequately with others, and mild to moderate limitation appropriately dealing with stress. (*Id.*)

In her RFC assessment, Dr. Mount indicated Plaintiff had "none" to "mild" limitation understanding and remembering simple instructions; no limitation carrying out simple instructions; and no limitation in her ability to make judgments on simple work related decisions. (T. 961.)[4] Dr. Mount indicated Plaintiff had "mild" to "moderate" limitation understanding, remembering and carrying out complex instructions; and

---

[4] "Mild" is defined as "a slight limitation in this area, but the individual can generally function well." (T. 961.) "Moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (*Id.*)

15

making judgments on complex work related decisions. (*Id.*) She indicated Plaintiff had "moderate" limitation interacting appropriately with the public; and "mild" limitation interacting appropriately with supervisors, co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (T. 962.)

The ALJ afforded Dr. Mount's opinion "great weight." (T. 21-22.) The ALJ reasoned her opinion was consistent with the record which showed Plaintiff was not significantly limited by her mental impairments and treatment records which showed generally normal mental status examinations. (T. 21.) Overall, the ALJ's mental RFC determination was supported by Dr. Mount's opinion. Plaintiff has failed to provide any evidence in the record supporting greater limitations than imposed by the ALJ. Therefore, it is recommended that the ALJ's mental RFC determination be upheld.

### ii.) Credibility Determination

Plaintiff argues the ALJ erred in her credibility determination. (Dkt. No. 11 at 28-35 [Pl.'s Mem. of Law].) Due to the errors identified in weighing opinion evidence and formulating Plaintiff's physical RFC, and the impact they may have on the credibility finding, it is recommended on remand the ALJ reassess Plaintiff's credibility.

### iii.) Step Five Determination

Due to the errors in weighing opinion evidence in the record the ALJ will also need to make new findings related to what other work Plaintiff retains the ability to perform in the national economy, and should consult a vocational expert for testimony if warranted by the findings on remand. Therefore, it is recommended on remand the ALJ perform a new step five analysis and determination.

### iv.) Remand for Payment of Benefits

The Second Circuit has held that in some cases it is appropriate to remand for payment of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," *Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2004), *amended on other grounds,* 416 F.3d 101 (2d Cir. 2005), and evidence of disability is "overwhelming," *Shaw v. Chater,* 221 F.3d 126, 135 (2d Cir. 2000). Where, however, "the administrative record contains gaps," and "further findings would so plainly help to assure the proper disposition of [the] claim," remand for further proceedings is more appropriate. *Butts,* 388 F.3d at 385. Here, evidence of Plaintiff's limitations is not so overwhelming that further proceedings would be pointless. *See Williams v. Apfel,* 204 F.3d 48, 50 (2d Cir. 2000) (holding remand for payment of benefits because record failed to provide "persuasive evidence of total disability that rendered any further proceedings pointless"). Therefore, it is recommended Plaintiff's request that the matter be reversed and remanded for payment of benefits be denied.

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 12, 2018

_____
William B. Mitchell Carter
U.S. Magistrate Judge